APPALACHIAN TRAIL COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Appalachian Trail Co. v. Commissioner
Docket No. 7083-71.
United States Tax Court
T.C. Memo 1973-119; 1973 Tax Ct. Memo LEXIS 166; 32 T.C.M. (CCH) 520; T.C.M. (RIA) 73119; May 31, 1973, Filed Joe K. Telford and W. Woodrow Stewart, for the petitioner. Edward P. Phillips, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies of $14,655.58, $31,294.50, and $2,781.30 in petitioner's income taxes for taxable years ending the last day in February 1966, 1967, and 1968, respectively. *167 The parties have settled all except one of the issues raised by the pleadings. The sole issue remaining for decision is whether, as contended by petitioner, a $25,553.17 debt owing to petitioner became worthless during the fiscal year ending February 28, 1967. 2 espondent maintains that the debt did not become worthless until sometime in petitioner's fiscal year ending February 29, 1968. FINDINGS OF FACT Petitioner is an accrual basis taxpayer, incorporated under the laws of Georgia. Its principal place of business at the time of filing its petition herein was Cleveland, Georgia. Petitioner filed its Federal income tax returns for 1966 and 1967 with the district director of internal revenue in Atlanta, Georgia, and for 1968 with the Internal Revenue Service Center, Chamblee, Georgia, using a fiscal year ending on the last day of February. Petitioner is engaged in the business of manufacturing and selling oak flooring. Its normal sales procedure is to sell to wholesalers who, in turn, have petitioner ship the flooring directly to their customers. Petitioner then bills the wholesalers and they bill the customers. Petitioner began selling merchandise on open account *168 in the early part of 1963 to the Northerlin Company, Inc. (Northerlin), a wholesale lumber company having offices in New York. During 1963, 1964, 1965, and most of 1966, Northerlin was punctual in remitting payments and thereby maintained a relatively low balance owing on its account. 3 In early November 1966, Northerlin owed petitioner $712.80. Prior to the middle of 1966, Northerlin was managed by Edward M. Gilbert, Sr., and, upon Gilbert, Sr.'s death, Edward M. Gilbert, Jr. (Gilbert), assumed management of the company. Beginning in November of 1966, Northerlin substantially increased its business with petitioner and at the same time became increasingly delinquent in remitting payments on account. By December 30, 1966, Northerlin owed petitioner $34,268.77, and by February 1, 1967, Northerlin owed $39,154.05. By January of 1967, Virgil Hunt, Jr. (Hunt), petitioner's vice president and bookkeeper, was aware that the Northerlin account was "in trouble." In March of 1967, Hunt sought to reduce the amount owing from Northerlin by requiring that two earlier invoices be paid before any new shipment was made. This resulted in two payments totaling $6,370.23 being received *169 from Northerlin on March 16. A credit sale of $2,769.35 was then made to Northerlin on March 17. On April 20, petitioner also collected $10,000 from Northerlin, thereby reducing the amount owing to $25,553.17. Petitioner's taxable year ended on February 28, 1967. 4 Petitioner's president, C. C. Blalock, Jr. (Blalock), did not learn about Northerlin's delinquent account until around the middle of April 1967. A few days thereafter, Blalock and Hunt traveled to New York for the purpose of attempting to collect the debt owed by Northerlin. In a meeting with Gilbert, who was then president of Northerlin, petitioner's officers learned that Northerlin was "terribly insolvent." Nevertheless, as a result of this meeting, petitioner received the aforementioned $10,000 payment on April 20, 1967.
Petitioner deducted as a bad debt the $25,553.17 owing from Northerlin on its 1966 income tax return filed May 15, 1967. Attached to the return is an explanation of the bad debt deduction, signed by Blalock and dated May 12, 1967, which states: "This amount [$25,553.17] was charged to the Northerlin Company a wholesale lumber firm in New York controlled by one Edward M. Gilbert [Jr.] *170 who without our knowledge pled guilty to a criminal charge and has been sentenced to serve two years in prison. We have no hope that this account can be collected." Also attached to the return is a copy of a Time magazine article, dated May 5, 1967, stating that Gilbert had pleaded guilty and was sentenced and fined for, among other things, 5 illegally taking money in 1962 from the E. L. Bruce Co., a manufacturer of hardwood products, of which Gilbert was president, director, and a controlling shareholder. In the notice of deficiency, respondent determined that the Northerlin debt became worthless in petitioner's taxable year ending February 29, 1968, and therefore was not allowable as a deduction in its taxable year ending February 28, 1967. OPINION Section 166(a) (1) [1] allows a deduction for "any debt which becomes worthless within the taxable year." The sole question is whether the Northerlin account became worthless in petitioner's fiscal year 1967 or its fiscal year 1968. [2]
*171 In determining the year in which the debt became worthless, we do not have the guidance of a fixed formula. The timing of actual worthlessness is a question of fact, and the 6 answer must be derived not from a stereotyped legal test but from an examination of all the objective facts bearing on the issue. W. A. Dallmeyer, 14 T.C. 1282, 1291 (1950). The burden of proving the date of worthlessness is on petitioner, Earl V. Perry, 22 T.C. 968, 973 (1954), and in order to satisfy its burden, petitioner must show that by February 28, 1967, the end of its fiscal year, the account lacked potential value as well as current liquid value, Herbert W. Dustin, 53 T.C. 491, 501 (1969), affd. 467 F.2d 47 (C.A. 9, 1972). As a general rule, the burden of establishing worthlessness may be met by showing that some identifiable event occurred during the course of the year which effectively demonstrates the absence of potential value. Herbert W. Dustin, supra at 501; Sterling Morton, 38 B.T.A. 1270, 1278 (1938), affd. 112 F.2d 320 (C.A. 7, 1940); see also F. Sitterding, Jr., 20 T.C. 130, 136 (1953), *172 and W. A. Dallmeyer, supra at 1291-1292. Based upon the objective facts which appear in the record, we conclude that petitioner has not shown that the Northerlin account was worthless at the close of its taxable year ending in 1967. Accordingly, we sustain respondent's determination on this issue. 7 Initially, it may be noted that there is testimony that officers of petitioner, in April 1967, obtained information indicating that Northerlin was "terribly insolvent." However, the record does not show that Northerlin had no assets which could be applied on petitioner's claim. Indeed, there is no precise evidence as to what assets and liabilities that company had at the end of fiscal 1967. Northerlin was quite obviously still conducting its business at the end of February 1967 since, as pointed out in our Findings, petitioner sold it some merchandise on credit as late as March 17, 1967. We have pointed out in our Findings that Northerlin and petitioner had successfully transacted business on an open account basis since 1963. Beginning in November of 1966, Northerlin substantially increased the balance owing on its account, and by February 1, 1967, Northerlin *173 owed $39,154.05. While Hunt testified that he suspected Northerlin was "in trouble" in early January of 1967, Northerlin and petitioner continued to transact business. On March 16, 1967, after the close of the taxable year in issue, petitioner received two payments on account from Northerlin totaling $6,370.23, and, as mentioned above, the next day petitioner made another credit sale to Northerlin in the amount of $2,769.35. 8 We think these collections and this credit sale are significant. On brief, petitioner argues strenuously that it is the custom in the lumber business that accounts unpaid for over 30 days are considered questionable and that, therefore, petitioner considered the Northerlin account "hopelessly delinquent" at the close of its fiscal year, February 28, 1967. However, the applicable test is an objective one, and "one does not ordinarily sell goods to another on credit if it is certain that payment never will be received." Higginbotham-Bailey-Logan Co., 8 B.T.A. 566, 580 (1927). Cf. Janet McBride, 23 T.C. 926, 933 (1955), and New York Water Service Corp., 12T.C. 780, 192 (1949). We are mindful of Hunt's testimony that he sold *174 to Northerlin only after having collected on two earlier shipments, but this does not change the fact that the March 17, 1967, sale was an additional extension of credit to Northerlin. On brief, petitioner also states that "It was in the exercise of sound business judgment that petitioner determined for the period ending February 28, 1967, that there was no likelihood of recovery at any time in the future." However, again using the objective standard of actual worthlessness, petitioner's actions do not bear out this conclusion. Blalock testified that it was not until April of 1967 9 that he learned of Northerlin's delinquency. Upon so learning, Blalock and Hunt traveled to New York for the purpose of collecting the Northerlin debt, and as a result of their efforts, on April 20, 1967, petitioner received a $10,000 payment, thereby bringing total collections on the account after February 28, 1967, to $16,370.23 and reducing the debt to $25,553.17, the amount deducted on petitioner's income tax return. The fact that petitioner received this $10,000 payment, attributable to the debt, on April 20, 1967 - almost 2 months after the date on which it claims the debt was worthless *175 - shows value rather than worthlessness in the prior fiscal year. F. Sitterding, Jr., supra; see also J. T. Dorminey, 26 T.C. 940, 947 (1956). In short, we do not think petitioner has carried its burden of proving that the $25,553.17 debt was worthless on February 28, 1967. No identifiable event demonstrating worthlessness in the fiscal year has been shown. The record does not contain any precise information as to Northerlin's financial condition on the crucial date. While Northerlin was facing financial problems, petitioner collected a total of $16,370.23 on the delinquent account in March and April of 1967 and made a credit sale of $2,769.35 to Northerlin after the close of its taxable year. These objective facts 10 outweigh what petitioner's brief has described as the business judgment of petitioner's officers. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue. ↩
2. We need not consider whether petitioner is entitled to a partial bad debt deduction for its taxable year ending February 28, 1967, because petitioner has neither pleaded nor contended that it complied with the statutory conditions set out in sec. 166(a) (2). See, generally, H. W. Findley, 25 T.C. 311, 318-319 (1955), affirmed per curiam 236 F.2d 959↩ (C.A. 3, 1956).